# FOR PUBLICATION



FILED
Oct 25 2013, 5:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana
Indianapolis, Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

NATHANIEL BAKER,                )
                               )
    Appellant-Defendant,        )
                               )
      vs.                     )    No. 35A05-1210-CR-543
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.         )

APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable Jeffrey R. Heffelfinger, Judge
Cause No. 35D01-1112-FD-269

**October 25, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

During the early morning hours of December 5, 2011, Appellant-Defendant Nathaniel Baker, J.L.,[1] and Rodney Zellers stole approximately forty-five gallons of gasoline belonging to David Stephan. On December 15, 2011, the State charged Baker with one count of Class D felony theft. During trial, the State introduced evidence of prior bad acts committed by Baker. The trial court admitted this evidence over Baker's objection. Baker presented an alibi defense, claiming that he was with his fiancée the entire night in question. At the conclusion of trial, the jury found Baker guilty as charged. The trial court subsequently imposed a sentence of one and one-half years, with one year suspended. On appeal, Baker contends that the trial court abused its discretion in admitting the evidence of his prior bad acts. Concluding that it was error to admit the evidence of Baker's prior bad acts but that the admission of the challenged evidence was harmless, we affirm.

**FACTS AND PROCEDURAL HISTORY**

At approximately 1:00 or 2:00 a.m. on December 5, 2011, Baker and J.L. went to Zellers's residence. Baker and J.L. requested that Zellers come and help them steal some gasoline. Zellers drove Baker's vehicle to a farm located in Huntington County. Once at the farm, Baker and J.L. got out of the vehicle and stole approximately forty-five gallons of gasoline from gasoline tanks located on the property. The farm was owned by Stephan. Stephan did not know Baker, J.L., or Zellers and did not give any of the men permission to take the gasoline. It was Baker's idea to steal the gasoline, and Baker kept all of the

---

[1] We use initials when referring to J.L. because he was a minor at all times relevant to this appeal.

gasoline.

Later that morning, J.L. went to school. He was sent to the principal's office because he smelled like gasoline. While in the principal's office, J.L. told Detective Mike Davis that he smelled like gasoline because he, Baker, and Zellers had stolen gasoline earlier that morning. Shortly thereafter, Detective Davis interviewed Zellers. Zellers admitted that he had participated, with Baker and J.L., in the theft of gasoline during the early morning hours of December 5, 2011. Zellers also agreed to take Detective Davis to the location from where they had stolen the gasoline.

On December 15, 2011, the State charged Baker with one count of Class D felony theft. On April 17, 2012, Baker filed a notice of alibi. The trial court conducted a jury trial on September 23, 2012. During trial, Baker's fiancée, Sherry Draper, testified that Baker could not have participated in the theft because he was with her on the night in question. Draper testified that she picked Baker up from work at 1:30 a.m. and that they stayed up until nearly 4:00 a.m. On cross-examination, the State attacked Draper's credibility by questioning her about why she did not pick Baker up from work until 1:30 a.m. when his employment records indicated that his shift ended and he clocked out at 12:30 a.m. Following the conclusion of the presentation of evidence, the jury found Baker guilty as charged. The trial court subsequently sentenced Baker to a term of one and one-half years, with one year suspended to probation.

## DISCUSSION AND DECISION

### I. Admission of Evidence

3

Baker contends that the trial court abused its discretion in admitting certain evidence at trial. Specifically, Baker argues that the trial court abused its discretion in admitting evidence of his prior bad acts. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004) (citing *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004)). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

## A. Indiana Evidence Rule 404(b)

Indiana Evidence Rule 404(b) provides that evidence of other crimes, wrongs, or acts of a defendant is not admissible to prove the character of the defendant in order to show action in conformity therewith. "It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid. R. 404(b). In assessing the admissibility of Evidence Rule 404(b) evidence, the trial court must (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect. *Goldsberry v. State*, 821 N.E.2d 447, 455 (Ind. Ct. App. 2005). The well-established rationale behind Evidence Rule 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Id.*

It is undisputed that the State sought to introduce evidence of prior bad acts committed by Baker during trial. During the State's direct examination of J.L., the parties approached

the bench to address the admission of evidence of Baker's prior bad acts outside of the presence of the jury. We are unable to discern the arguments given by the State as to why the evidence of Baker's prior bad acts should be admitted because the conversation between the parties and the trial court was not recorded and is not available to this court on review.[2] After this conversation, the State continued its direct examination of J.L. The deputy prosecutor asked J.L. whether this was the first time that he and Baker had stolen gas. J.L. responded negatively and, upon further questioning by the deputy prosecutor, stated that he and Baker had stolen gas "[l]ike two or three (2-3) times." Tr. p. 108.

In arguing that the trial court abused its discretion in admitting this evidence, Baker argues that the record is devoid of any indication that the evidence of Baker's prior bad acts was introduced for any purpose other than to show that he had a propensity to steal gasoline. The State counters, arguing that the trial court acted within its discretion in admitting the evidence of Baker's prior bad acts because the deputy prosecutor "was entitled to refute [Baker's alibi defense] by introducing evidence of prior offenses of the same nature to show [Baker's] knowledge, identity, and intent." Appellee's Br. p. 8.

### 1. Knowledge

In *Whitehair v. State*, 654 N.E.2d 296, 302 (Ind. Ct. App. 1995), we concluded that, with respect to a defendant's knowledge of the wrongfulness of his actions, evidence of a

---

[2] In an effort to provide this court with information about the unrecorded conversation between the trial court and the parties, Baker's counsel filed a verified statement of the evidence on appeal. The verified statement of the evidence included a statement by the deputy prosecutor that she "asked to approach because [she] wanted to introduce evidence of a prior bad act and [she] wanted to give to defense to object outside the presence of a jury. The defense did object. The judge overruled the objection." Appellant's App. p. 68.

defendant's prior bad acts is only admissible when the defendant puts his knowledge in issue. Nothing in the record indicates that Baker put his knowledge in issue. Baker did not claim that he believed that he was entitled to take the gasoline. Rather, he claimed that he was not involved in the alleged theft of the gasoline. The State does not point to anything in the record that would suggest that Baker put his knowledge in issue or present any authority in support of its claim. As such, we conclude that the evidence of Baker's prior bad acts was not admissible under the knowledge exception to Evidence Rule 404(b).

### 2. Identity

The identity exception to Evidence Rule 404(b) is "crafted primarily for 'signature' crimes with a common modus operandi." *Thompson v. State*, 690 N.E.2d 224, 234 (Ind. 1997). "The exception's rationale is that the crimes, or means used to commit them, were so similar and unique that it is highly probable that the same person committed all of them." *Id*. "The test, of course, is whether the crimes are strikingly similar." *Garland v. State*, 788 N.E.2d 425, 31 (Ind. 2003). In the instant matter, there were no details given about the previous times that J.L. and Baker stole gas. As such, the State could not use this evidence to prove that the means used to commit the instant crime were so similar and unique to those used by Baker when committing the prior bad acts so as to make it highly probable that Baker committed all of the acts. *See Thompson*, 690 N.E.2d at 234. The evidence of Baker's prior bad acts was not admissible under the identity exception to Evidence Rule 404(b).

### 3. Intent

In *Wickizer v. State*, 626 N.E.2d 795, 799 (Ind. 1993), the Indiana Supreme Court held

that the intent exception in Evidence Rule 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. Stated another way, "the defendant must first place intent 'at issue' before prior bad act evidence relevant to intent is admissible." *Johnson v. State*, 722 N.E.2d 382, 384 (Ind. Ct. App. 2000). In this case, Baker did not place his intent into issue. Baker did not present a claim of a particular contrary intent but rather argued that he did not participate in the alleged theft. As such, we conclude that evidence of Baker's prior bad acts was not admissible under the intent exception to Evidence Rule 404(b).

Having concluded that the evidence of Baker's prior bad acts was not properly admitted under the knowledge, identity, or intent exceptions of Evidence Rule 404(b), we find that the record is devoid of any indication that the evidence was introduced for any purpose other than to show that Baker had the propensity to steal gasoline. As such, we conclude that it was error to admit the evidence of Baker's prior bad acts.

## B. Whether the Erroneous Admission of the Evidence Was Harmless

Although we find the admission of the prior conduct evidence to have been error, not all trial errors compel reversal.

> No error in the admission of evidence is ground for setting aside a conviction unless such erroneous admission appears inconsistent with substantial justice or affects the substantial rights of the parties. The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. To decide if the erroneous admission of prejudicial evidence of extrinsic offenses is harmless, we therefore evaluate whether the jury's verdict was substantially swayed.

*Wickizer*, 626 N.E.2d at 800 (citations omitted). "The improper admission of evidence is harmless error when the reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction." *Meadows v. State*, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003). "To determine that the error did not contribute to the verdict, we determine whether the error was unimportant in relation to everything else the jury considered on the issue in question." *Id*.

In the instant matter, we cannot say that there is a substantial likelihood that the challenged evidence substantially swayed the jury's verdict. Resolution of the instant matter turned on a credibility determination by the jury. One must assume that the jury's guilty finding indicates that the jury found J.L. and Zellers to be more credible than Draper. We find it unreasonable to think that the jury's decision as to credibility of the witnesses turned on the fact that J.L. briefly testified without detail that he and Baker had stolen gasoline on prior occasions.

Again, both J.L. and Zellers gave consistent accounts of the trio's actions. Their testimony demonstrated that J.L. and Baker went to Zellers's home around 1:00 or 2:00 a.m. on December 5, 2011, Zellers drove the trio in Baker's vehicle to a farm located in Huntington County, and J.L. and Baker stole approximately forty-five gallons of gasoline from gasoline tanks located on the farm. Both J.L.'s and Zellers's consistent accounts of the trio's actions were bolstered by their actions in the day or two following the theft. J.L.'s account was bolstered by his testimony that he told police about the trio's actions later that

morning after he was sent to the principal's office and questioned about why he smelled like gasoline. Likewise, Zellers's account was bolstered by his immediate willingness to admit his participation in the theft and to take Detective Davis to the location where the theft occurred. Their testimony was in direct contradiction to Draper's testimony that Baker could not have participated in the theft because he spent the entire night in question with her.

Upon review, we are convinced that there is no substantial likelihood that the questioned evidence contributed to Baker's conviction in light of J.L.'s and Zellers's consistent testimony about the trio's actions and the jury's apparent determination that J.L. and Zellers were more credible than Draper. As such, we conclude that the jury's determination that Baker participated in the theft was supported by substantial independent evidence, and the erroneous admission of the evidence of Baker's prior bad acts was harmless.

## CONCLUSION

In sum, while we conclude that it was error for the trial court to admit the evidence of Baker's prior bad acts, such error was harmless in light of J.L.'s and Zellers's testimony regarding the theft of gasoline from Stephan.

The judgment of the trial court is affirmed.

BAILEY, J., and MAY, J., concur.