## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 28 2016, 8:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian R. Chastain
Dillman Chastain & Byrd, LLC
Corydon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin L. Nicholson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 28, 2016

Court of Appeals Case No.
88A05-1601-CR-116

Appeal from the Washington
Superior Court

The Honorable Frank Newkirk,
Jr., Judge

Trial Court Cause No.
88D01-1507-F4-373

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Kevin L. Nicholson (Nicholson), appeals his conviction for burglary, a Level 4 felony, Ind. Code § 35-43-2-1, and his adjudication as an habitual offender.

[2] We affirm.

## ISSUE

[3] Nicholson raises one issue on appeal, which we restate as: Whether the trial court abused its discretion by admitting evidence of prior bad acts.

## FACTS AND PROCEDURAL HISTORY

[4] On July 6, 2015, sisters Sandra Clark (Clark) and Marilyn Brown (Brown) visited their parents' home on State Road, in Salem, Indiana. The parents, Floyd (Floyd) and Francis Fletcher, reside in a nearby assisted living home and no longer live in the residence. Clark and Brown continue to maintain the house. When they arrived at the residence at approximately 3:30 p.m., they noticed a blue Ford Taurus in the driveway. After walking around the back of the house, they saw that the door to the kitchen was open with a man standing inside. Clark asked him what he was doing inside and he gave them his name as Nicholson. Nicholson explained that he used to work for Floyd and "that he had come into the house because he thought he heard something in the house and Floyd might be down on the floor and he just needed to check on him." (Transcript p. 114). Nicholson told the sisters that he had a key to the house,

but when Clark demanded the key, Nicholson changed his response and assured her that he did not have a key. Clark told Nicholson to leave the house.

[5] Brown and Nicholson walked to the porch, while Clark "headed for the front bedroom." (Tr. p. 114). Checking the nightstands in the bedroom, Clark noticed that several containers with coins were not in the nightstand where she and her sister had left them previously. Outside, Nicholson told Brown that "he needed copies of appraisals from Floyd that he had helped work on or he'd be in trouble." (Tr. p. 181). When Clark joined them again, she informed Brown that "things had either been moved or were missing." (Tr. p. 181). While Brown went inside to check, Nicholson invited Clark to look in his car. Checking Nicholson's car, Clark and Brown did not see the missing containers. They did find tools in the trunk of the car and Nicholson explained that "he was in construction." (Tr. p. 119). Clark informed Nicholson that she was going to call the police. However, Nicholson "couldn't wait for the police" because "he would lose his job at White Castle in Orleans and he had to go." (Tr. p. 119). He wrote down his phone number and gave it to Brown.

[6] An officer arrived and searched the house. When Clark and Brown returned to the bedroom, they found the missing coin jars inside a pillow case in the bedroom's closet. Another officer located Nicholson's car in Orange County. After initiating a traffic stop, Nicholson first told the officer that "he went inside the residence because he was afraid [Floyd] was down," but "[a] few minutes later he said he went inside the residence to look for some drawings or plans or something where he used to work for [Floyd]." (Tr. p. 296). Nicholson

informed the officer that he was on his way "to Orleans to talk to a guy about a concrete job and [that] he was unemployed at the time." (Tr. p. 196). The officer arrested Nicholson. An inventory search of Nicholson's car revealed old coins, old football cards, a silver spoon, an old children's book, rings, an old mug, a cell phone, binoculars, channel locks, a file tool, and a pry bar.

[7] On July 9, 2015, Nicholson called his mother, Jesse Spradlin (Spradlin), from jail. When Spradlin asked Nicholson "what did you break in that house for?", Nicholson responded, "I was just hungry and needed a place to stay." (Tr. p. 318). In another phone call made on July 9, 2015, Nicholson spoke with Anthony Bane (Bane), whom Nicholson referred to as his "partner in fuckin' crime." (Tr p. 347). When Bane asked him "[w]here did they get you," Nicholson replied, "[] 135 North where I used to work for [Floyd] [] [t]he door was unlocked and I walked in." (Tr. pp. 332-33). During the call, they mostly spoke about their friends who had recently been "hemmed up." (Tr. p. 346).

[8] On July 6, 2015, the State filed an Information, charging Nicholson with Count I, burglary, a Level 4 felony; Count II, residential entry, a Level 6 felony; Count III, theft, a Level 6 felony; Count IV, attempted theft, a Level 6 felony; and with being an habitual offender. On four separate occasions prior to trial, the State filed notices of intent to admit prior bad acts pursuant to Indiana Evidence Rule 404(b) for purposes of showing proof of motive, intent, preparation, plan, knowledge, identity and/or absence of mistake or accident. On October 29, 2015, Nicholson filed a motion in limine, objecting to the introduction of the items discovered during the inventory search of Nicholson's

vehicle based on relevancy grounds, to Nicholson's jail calls based on hearsay and relevancy grounds, and to the State's intent to use prior bad act evidence. After a hearing, the trial court granted Nicholson's motion in part and denied it in part. Specifically, the trial court concluded that the State could not refer to the tools located in Nicholson's vehicle as burglary tools and the trial court limited certain content in the jail phone calls to Spradlin and Bane.

[9] On November 17 through 19, 2015, the trial court conducted a jury trial. At the close of the evidence, the jury found Nicholson guilty as charged. During the sentencing hearing on December 21, 2015, the trial court merged Counts II-IV into Count I and sentenced Nicholson to eight years for burglary, enhanced by twelve years for the habitual offender adjudication.

[10] Nicholson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[11] Nicholson contends that the trial court abused its discretion in admitting certain evidence at trial. Specifically, Nicholson argues that the trial court abused its discretion in admitting evidence of his prior bad acts. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Baker v. State*, 997 N.E.2d 67, 70 (Ind. Ct. App. 2013).

[12] Indiana Evidence Rule 404(b) provides that evidence of other crimes, wrongs, or acts of a defendant is not admissible to prove the character of the defendant in order to show action in conformity therewith. "It may, however, be

admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Evid. R. 404(b). In assessing the admissibility of Evidence Rule 404(b) evidence, the trial court must (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect. *Goldsberry v. State*, 821 N.E.2d 447, 455 (Ind. Ct. App. 2005). The well-established rationale behind Evidence Rule 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Id.*

### I. *Contents of Nicholson's Car*

[13] At trial, the State sought to introduce the items discovered in Nicholson's car during an inventory search, *i.e.*, old coins, a cell phone, binoculars, a pry tool, channel locks, old football cards, a silver spoon, an old children's book, a ring, and an old mug. Nicholson objected because "although [the State] refer[s] to it as an inventory search, it wasn't an inventory search, it was an investigative search . . . and therefore, it requires probable cause." (Tr. p. 207). As a separate ground, Nicholson disputed the relevancy of the items to the burglary cause and raised an objection—albeit very briefly—based on "bad acts committed by" Nicholson. (Tr. p. 224).

[14] Nicholson does not dispute that he affirmatively presented a claim of contrary intent. In fact, Nicholson alleged that he was not inside the residence to

commit a theft, rather, he was in the residence because he had heard a noise and thought Floyd needed help. In *Wickizer v. State*, 626 N.E. 795, 799 (Ind. 1993), the Indiana Supreme Court held that the intent exception in Evidence Rule 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. Stated another way, "the defendant must first place intent 'at issue' before prior bad act evidence relevant to intent is admissible." *Johnson v. State*, 722 N.E.2d 382, 384 (Ind. Ct. App. 2000).

[15] To refute Nicholson's intent, the trial court admitted the items located during the inventory search of his vehicle at the State's request and over Nicholson's objection. The State presented a police officer's testimony, stating that the items discovered in Nicholson's car are items that are "commonly stolen[.]" (Tr. p. 214). Thus, these items are relevant to establish Nicholson's intent at the time of the charged offense. *See Hicks*, 690 N.E.2d at 221.

[16] Turning to the second prong, we have to balance the probative value of the car's contents against its prejudicial effect. *See Goldsberry*, 821 N.E.2d at 455. We note that any potential prejudice to Nicholson was minimized by the trial court's jury instruction. *See Johnson v. State*, 722 N.E.2d 382, 385 (Ind. Ct. App. 2000). Prior to handing the cause to the jury, the trial court tendered a limiting instruction:

> Evidence has been introduced that [Nicholson] was involved in crimes other than those charged in the [I]nformation. This evidence has been received solely on the issue of [Nicholson's]

motive, intent, preparation, plan, knowledge, and absence of mistake. This evidence should be considered by you only for that limited purpose.

(Tr. pp. 625-26). Accordingly, the trial court properly admitted the contents of Nicholson's vehicle.

## II. *Cell Phone Records*

[17] Next, Nicholson disputes the trial court's admission of his cell phone records. At trial, Nicholson objected to their admission based on "a constitutional protected thing." (Tr. p. 268). In so far he now objects to their admission based on prior bad act evidence, Nicholson's claim is waived for our review. A defendant may not present one ground for an objection at trial and assert a different one on appeal. *Lashbrook v. State*, 762 N.E.2d 756, 759 (Ind. 2002).

## III. *Recorded Telephone Conversations*

[18] During the trial, the trial court admitted recordings of Nicholson's phone conversations with Spradlin and Bane. With respect to the Spradlin conversation, Nicholson incorporated the objections made in his motion in limine, which were based on hearsay and relevancy grounds. The trial court overruled Nicholson's objection and played the phone conversation to the jury. On appeal, Nicholson, in a two-sentence argument, claims that he "objects to the relevancy of the call and maintains it is hearsay. Even if not, the prejudicial impact by introducing the recordings outweighs the probative value." (Appellant's Br. p. 21). Pursuant to Indiana Appellate Rule 46(A)(8)(a), issues

must be accompanied by cogent reasoning and "[e]ach contention must be supported by citations to the authorities, statutes and the Appendix or parts of the Record on appeal." As Nicholson failed to follow Ind. Appellate R. 46(A)(8)'s guidelines in presenting his appellate argument with respect to his jail conversation with Spradlin, his claim is waived for our review.

[19] Turning to his phone conversation with Bane, Nicholson again incorporated the arguments raised in his motion in limine when objecting to its admission at trial. In his motion in limine, Nicholson objected based on hearsay and relevancy grounds. On appeal, Nicholson repeats these grounds. However, besides treating this court to a lengthy *verbatim* expose of his telephone conversation with Bane, Nicholson fails to include an argument, let alone a cogent one. *See* Ind. Appellate R. 46(A)(8)(a). As such, the issue is waived.

[20] In so far as Nicholson now also argues that "the call references prior acts of the defendant and others that go well beyond the purpose of showing motive or intent," the issue was not presented to the trial court and therefore cannot be raised for the first time on appeal. (Appellant's Br. p. 22); *see Lashbrook*, 762 N.E.2d at 759.

IV. *Introduction of Pawn Shop Records*

[21] Nicholson claims that the trial court abused its discretion by admitting pawn shop records from January 2015 and June 2015 establishing that he pawned certain items. Specifically, Nicholson states that he "is challenging the relevance of the evidence, the prejudicial impact it has upon the defendant and

the application of [E]vidence [R]ule 404(b). These were acts prior to the burglary allegation in this case." (Appellant's Br. p. 25). Besides including an excerpt from the record, Nicholson does not develop an argument for his objection.

[22] "We will not become an advocate for a party, nor will we address arguments which are either inappropriate, too poorly developed or improperly expressed to be understood." *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). We find Nicholson's claim waived for our review. *See* Ind. Appellate R. 46(A)(8)(a).

### V. *Introduction of Prior Theft Convictions*

[23] Lastly, Nicholson contends that the trial court abused its discretion in admitting two prior theft convictions in violation of Evid. R. 404(b).

[24] In the case at bar, Nicholson explicitly advised the jury of a particular contrary intent, *i.e.*, he entered the residence because he thought Floyd had fallen and needed help. As such, the State "may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense." *Wickizer*, 626 N.E.2d at 799. In response to Nicholson's contrary intent, the State presented evidence that he had been convicted of theft in 2010 and 2012. Because Nicholson's prior theft convictions were relevant to establish his intent, the trial court admitted the convictions over Nicholson's objection.

Furthermore, turning to the second prong of Evid. R. 404(b), we note that, similar to Nicholson's car contents, the trial court tendered a limiting instruction to the jury minimizing any possible prejudicial effect of Nicholson's prior theft convictions. *See Johnson*, 722 N.E.2d at 385. Therefore, we conclude that the trial court did not abuse its discretion in admitting Nicholson's prior convictions.

## CONCLUSION

Based on the foregoing, we hold that the trial court did not abuse its discretion in admitting certain evidence pursuant to Indiana Evidence Rule 404(b).

Affirmed.

Bailey, J. and Barnes, J. concur