## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 05 2017, 6:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Conn, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 5, 2017 <br><br> Court of Appeals Case No. <br> 49A05-1606-CR-1268 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila A. Carlisle, Judge <br><br> Trial Court Cause No. <br> 49G03-1506-F1-22973 |

**Bailey, Judge.**

# Case Summary

Joshua Conn ("Conn") appeals his conviction for Attempted Murder, a Level 1 felony.[1] We affirm.

# Issues

Conn presents two issues for review:

    I.    Whether sufficient identification evidence supports the conviction; and

    II.    Whether the trial court abused its discretion by admitting into evidence a photographic array and permitting related testimony.

# Facts and Procedural History

In June of 2015, Curtisha Patterson ("Patterson") lived with her girlfriend, Tiara Taylor ("Taylor"), and Taylor's children in an Indianapolis apartment. Tiara Davis ("Davis") and her child had been staying there temporarily. On the evening of June 25, 2015, KayCie Glenn ("Glenn") knocked on the apartment door. She was accompanied by Conn.

Recognizing Glenn as Taylor's former co-worker, Patterson opened the door. Glenn began to confront Taylor as to why her telephone number would be

---

[1] Ind. Code §§ 35-42-1-1, 35-41-5-1. He does not challenge his conviction for Carrying a Handgun Without a License, as a Class A misdemeanor, I.C. § 35-47-2-1.

programmed into Conn's telephone. Taylor denied involvement with Conn. When Davis asked Taylor if she knew Glenn and Conn, Conn interjected "what the f--- is it to you?" (Tr. at 109). This angered Patterson, and Conn and Patterson began to argue and trade insults.

[5]  Glenn persuaded Conn to go outside, away from the children. Eventually, all the adults moved outside and the argument and mutual insults continued. Patterson swung a pocket knife at Conn, but Davis and Taylor held her back, and the knife did not touch Conn. Conn repeatedly instructed the women "don't hold her back." (Tr. at 111.) As Glenn and Conn prepared to leave in Glenn's vehicle, Conn said "I'll be back." (Tr. at 111.) With Glenn driving away, Conn screamed "F--- that bitch. I'm coming to kill that bitch." (Tr. at 190).

[6]  Patterson called her cousin, Avante Collier ("Collier"), and reported the encounter. Collier soon arrived at the apartment complex parking lot, accompanied by a friend. They stayed in the parking lot to talk with Patterson. Meanwhile, Taylor and Davis had decided to take their children and leave. They placed the three children in their vehicle and Davis got behind the wheel.

[7]  Approximately ten minutes after their argument, Patterson saw Conn in the parking lot. She and Collier approached him. When Patterson and Conn were two or three cars lengths apart, Conn raised a gun and began firing at Patterson. Two bullets struck her, one in the stomach and one in the leg. As Patterson

crawled away, she continued to hear shots. Collier saw the shooter take off running.

[8] Hearing shots fired, Davis began to drive away. She immediately saw Conn running toward Emerson Avenue. Taylor also observed Conn running toward Emerson Avenue. The women decided to drive back and look for Patterson, and they found her collapsed in the parking lot. With assistance from Collier, Taylor and Davis loaded Patterson into their vehicle and took her to a nearby hospital. Patterson survived her extensive injuries, but endured five surgeries.

[9] Conn was charged with, and a jury found him guilty of, Attempted Murder and Carrying a Handgun Without a License. He received an aggregate sentence of thirty-five years. This appeal ensued.

# Discussion and Decision

## Sufficiency of the Evidence

[10] Conn argues that "the evidence is insufficient to sustain the verdict of guilt[y] on the attempted murder count, since the evidence fails to reliably identify Conn, beyond a reasonable doubt, as the person who shot Patterson." Appellant's Brief at 14.

[11] When we review a claim of insufficient evidence, "we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility." *Griffith v. State*, 59

N.E.3d 947, 958 (Ind. 2016). "We affirm the judgment unless no reasonable factfinder could find the defendant guilty." *Id.*

[12] At trial, Patterson testified that she saw Conn point his gun "straight at" her and shoot it. (Tr. at 52.) She saw flashes from the gun and was struck by the first two shots. Conn argues, however, that Patterson's testimony lacks reliability because the parking lot was not well-lit and Patterson could have identified Conn as revenge for the earlier argument. His argument presents a blatant request to reweigh evidence, which we cannot do. *Griffith*, 59 N.E.3d at 958.

[13] Conn also points to evidence that shell casings were recovered from two different guns, and claims that the jury was invited to merely "assume" that Conn as opposed to a second shooter fired the bullets that struck Patterson. Appellant's Brief at 19. We reject Conn's argument. First, Patterson testified that she observed Conn fire the shots that struck her stomach and leg. Second, the State was not required to prove that Conn acted alone. Rather, the State was required to prove that he, with requisite intent, took a substantial step toward committing murder. *See* I.C. § 35-41-5-1.

## Admission of Evidence

[14] Conn next contends that the trial court should have excluded copies of a photographic array with Conn's photograph marked by Taylor and Davis, as well as related testimony. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Baker v. State*, 997 N.E.2d 67, 70

(Ind. Ct. App. 2013). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[15]   Detective Robert Robinson ("Detective Robinson") testified that he presented a photographic array to Patterson, Taylor, and Davis, telling each woman that the shooter "may or may not be in these photos." (Tr. at 369.) Detective Robinson instructed each woman that, if she could make an identification or someone looked familiar, she was to mark the photograph with an X. Before Detective Robinson testified to the response from Taylor and Davis, Conn asked some preliminary questions of Detective Robinson. This foundational testimony clarified that Davis and Taylor saw the photographic array after having advised Detective Robinson that they had seen Conn running as opposed to Conn shooting. Conn then objected that the signed copies of the photographic array and related testimony would be irrelevant and misleading. They were admitted over Conn's objection.

[16]   On appeal, Conn argues that the challenged evidence improperly bolstered Patterson's identification testimony and deprived him of the opportunity for effective cross-examination. He directs our attention to *Modesitt v. State*, 578 N.E.2d 649, 652 (Ind. 1991), wherein our Indiana Supreme Court determined that the "drumbeat repetition" of a victim's statements prior to the victim's testimony precluded direct, immediate cross examination of the statements and was reversible error.

[17] Conn did not lodge a trial objection on bolstering grounds; accordingly, his new argument is waived for review. *See Norris v. State*, 53 N.E.3d 512, 522 (Ind. Ct. App. 2016). Moreover, notwithstanding such waiver, Conn has not shown how the circumstances of his trial were akin to those in *Modesitt*. In *Modesitt*, the victim's charges were repeated at trial with numerous hearsay statements made through the mother, the caseworker, and the psychologist before the victim testified and corroborated some of the hearsay statements. *See id.* at 650. Here, Patterson testified that Conn shot her before Detective Robinson, Taylor, or Davis testified. Conn has not explained how his cross-examination was curtailed.

[18] Additionally, Taylor and Davis were not asked to relate hearsay statements made to them by Patterson. Rather, they each testified to their own observations. These included Conn's flight but not an act of shooting. Taylor and Davis each clarified the basis for her signature on the photographic array. Conn has not demonstrated that the trial court's decision to admit the photographic array and related testimony was clearly against the logic and effect of the facts and circumstances before the court.

# Conclusion

[19] Sufficient evidence supports Conn's conviction for Attempted Murder. He has demonstrated no abuse of discretion in the admission of evidence.

Affirmed.

Vaidik, C.J., and Robb, J., concur.