## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2020, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James D. Crum
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Edgar Leary,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 6, 2020

Court of Appeals Case No.
19A-CR-2186

Appeal from the Hamilton
Superior Court

The Honorable Gail Bardach,
Judge

Trial Court Cause No.
29D06-1811-F6-7974

**Bradford, Chief Judge.**

# Case Summary

In August of 2019, Robert Edgar Leary was convicted of Level 6 felony operating a vehicle with an alcohol concentration equivalent ("ACE") of 0.08 grams per 210 liters of breath or greater and sentenced to 910 days on work release. Leary contends that the trial court erred by (1) admitting portions of a 911 call and (2) denying him an additional peremptory challenge. We affirm.

# Facts and Procedural History

On November 15, 2018, a vehicle being driven by Leary crashed into a guardrail after coming off a bridge near the intersection of Carrigan Road and North Harbor Drive in Hamilton County. Moments later, Leary pulled the vehicle into the Harbor Mini Mart parking lot and fled on foot. Ashleigh Leary, Leary's daughter, was a passenger in the vehicle and called 911 to report the accident. Approximately fifteen to twenty minutes later, law enforcement located Leary. Leary told Officer Zachary Bush that he had been driving the vehicle up to "the North Harbour [*sic*], Carrigan Road intersection, and said, 'I was driving right there, and then Ashleigh got in the car and started driving.'" Tr. Vol. II p. 126.[1] Officer Bush observed that Leary's eyes were bloodshot and smelled the odor of an alcoholic beverage emanating from his breath. Leary admitted to Officer Bush that "he had some beers earlier." Tr. Vol. II p. 126.

---

[1] Officer Bush noted that this was approximately a quarter mile from the Harbor Mini Mart parking lot.

Officer Bush administered the horizontal-gaze-nystagmus test (a field-sobriety test), which Leary failed. Officer Bush eventually transported Leary to the Hamilton County Jail to conduct a certified chemical breath test, which determined Leary's ACE to be 0.120 g/210 L.

[3] On November 16, 2018, the State charged Leary with Class A misdemeanor operating a vehicle while intoxicated ("OWI") endangering a person, Class C misdemeanor operating a vehicle with an ACE of 0.08 or greater, Class B misdemeanor leaving the scene of an accident, Level 6 felony OWI endangering a person, and Level 6 felony operating a vehicle with an ACE of 0.08 or greater. On August 19, 2019, the State dismissed the leaving-the-scene-of-an-accident charge. On August 20, 2019, a jury trial was held. During *voir dire*, Juror 15 was selected as a member of the jury; however, Juror 15 left the courtroom with the prospective jurors who had been struck and never returned. After Juror 15's departure, there were two remaining seats to be filled on the jury. Having already used his five peremptory strikes, Leary requested an additional peremptory strike, which was denied by the trial court.

[4] During the State's case-in-chief, Leary objected to the playing of the 911 call, which was overruled by the trial court. The jury found Leary guilty of both misdemeanor offenses, which the trial court merged, and Leary admitted to having been convicted of a prior OWI offense within five years.[2] The trial court

---

[2] The State dismissed the other Level 6 felony OWI charge.

entered a judgment of conviction for Level 6 felony operating a vehicle with an ACE of 0.08 or greater and sentenced Leary to 910 days on work release on September 17, 2019.

# Discussion and Decision

# I. 911 Call

Because Ashleigh did not testify at trial, Leary contends that the trial court erroneously admitted certain portions of the 911 call in violation of the Confrontation Clause. "We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Baker v. State*, 997 N.E.2d 67, 70 (Ind. Ct. App. 2013). "An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Id*.

> The Confrontation Clause, embodied in the Sixth Amendment to the United States Constitution, provides that in all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him. The Indiana Constitution extends a similar guarantee. *See* Ind. Const., Art. 1, § 13(a) ("In all criminal prosecutions, the accused shall have the right to … meet the witnesses face to face[.]"). The Confrontation Clause prohibits the admission of an out-of-court statement if it is testimonial, the declarant is unavailable, and the defendant had no prior opportunity to cross-examine the witness.

> […]

> To determine whether a statement is testimonial, we look at the primary purpose of the conversation. If the circumstances indicated the purpose of the interrogation is to enable police assistance to meet an ongoing emergency, then the statements are

considered non-testimonial and not subject to the Confrontation Clause. However, if circumstances indicate the primary purpose of the conversation is to prove past events potentially relevant to later criminal prosecution, then the statements are considered testimonial and protected by the Confrontation Clause.

*King v. State*, 985 N.E.2d 755, 758 (Ind. Ct. App. 2013) (cleaned up), *trans. denied*. The portions of the 911 call that Leary takes issue with are as follows:

911 OPERATOR: 911, what's the address of the emergency?

[ASHLEIGH]: I'm off of Carrigan Road. I'm at Harbor Mini Mart. (indiscernible) Harbor Mini Mart. My father is leaving a scene of an accident. He smashed into a guardrail at the (indiscernible).

[…]

911 OPERATOR: Okay. So, he had a crash in the parking lot. Is that right?

[ASHLEIGH]: Not into the parking lot. When we were coming in off the bridge from where Morse Lake is, there is a guardrail, and he was looking to the left, not paying attention, and he smashed into the guardrail, and I told him to pull the car over. And he said no, so that's when (indiscernible) fiancé and said I need to [give] 911 a call. I need to call 911.

[…]

911 OPERATOR: And he'll have – he'll have – you said a few beers in his pocket?

[ASHLEIGH]: Yeah. And he won't be able to pass the breathalyzer either.

Tr. Vol. II pp. 118, 120, 123.

[6] At the outset we observe that given the overwhelming evidence of guilt that any Confrontation Clause violation in this case was harmless beyond a reasonable doubt. Not every error in the admission of evidence requires a reversal. *Carr v. State*, 934 N.E.2d 1096, 1107 (Ind. 2010). "And before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* (internal quotations and citations omitted). "The improper admission of evidence is harmless error when the reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction." *Meadows v. State*, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003), *trans. denied*.

[7] In this matter, said portions of the 911 call aside, the evidence of guilt is overwhelming. The record indicates that Leary admitted to law enforcement that he had been driving the vehicle, at minimum, approximately a quarter mile from where it eventually was parked at the Harbor Mini Mart. Leary also admitted that he had been drinking alcohol. Moreover, Officer Bush observed that Leary's eyes were bloodshot and smelled the odor of an alcoholic beverage emanating from his breath. The chemical breath test indicated that Leary's ACE was 0.120, well above the legal limit. Finally, nearly all of the information Leary takes issue with in the 911 call is also included in the Call for Service Detail Report, which was admitted into evidence without objection as State's Exhibit 6. This evidence, alone, overwhelmingly supports Leary's conviction.

# II. Peremptory Strike

Leary contends that the trial court erred by failing to grant him an additional peremptory strike following Juror 15's departure. The control of *voir dire* by the trial court is a discretionary matter. *Baird v. State*, 604 N.E.2d 1170, 1186 (Ind. 1992), *cert. denied*. "There is no constitutional or fundamental right to exercise peremptory challenges." *Castro v. State*, 580 N.E.2d 232, 235 (Ind. 1991). "The right to peremptory challenges is a matter of statutory grant which may not be expanded or restricted by judicial interpretation." *Id*. "Upon review, we will look only to the statute to determine appellant's right." *Id*. In prosecutions for Level 6 felony and misdemeanor offenses, a defendant may peremptorily strike five jurors. *See* Ind. Code § 35-37-1-3(c) ("In prosecution for all other crimes, the defendant may challenge, peremptorily, five (5) jurors.").

Here, there is no dispute that Leary received and used his five peremptory strikes. This is exactly what he was entitled to under Indiana law, and the trial court cannot have erred for following the law. The trial court noted that

> [Y]ou're making your statement on the record that you should have another strike because someone you didn't strike and couldn't strike because you've already struck everybody else that you're entitled to left.
>
> […]
>
> [A]nd I'm denying your argument. I don't think that gives you the right to another strike. Either one of you.

Tr. Vol. II p. 71. Moreover, Leary has failed to demonstrate how the denial of an additional peremptory strike prejudiced him in any way. In fact, Leary did not use one of his peremptory strikes on Juror 15, as the trial court noted, stating, "You already used them, and you didn't use it on him." Tr. Vol. II p. 70. Leary has failed to establish that the trial court erred in this regard.

[10] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.