

**FILED**

Feb 25 2016, 6:25 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Peter D. Todd | Gregory F. Zoeller |
| Elkhart, Indiana | Attorney General of Indiana |
| | Monika Prekopa Talbot |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John H. Hill, | February 25, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A03-1507-CR-907 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, | The Honorable Evan S. Roberts, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 20D01-1312-FC-296 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, John H. Hill (Hill), appeals his conviction for criminal confinement, a Class C felony; domestic battery, a Class D felony; domestic battery, a Class A misdemeanor; and interference with the reporting of a crime, a Class A misdemeanor.

[2] We affirm.

## ISSUE

[3] Hill raises one issue on his appeal, which we restate as follows: Whether the State improperly interfered with Hill's defense by preventing his witness from testifying.

## FACTS AND PROCEDURAL HISTORY

[4] On December 18, 2013, at approximately 2:47 p.m., Officer Bruce Anglemyer (Officer Anglemyer) of the Elkhart Police Department was dispatched to a residence on West Blaine Avenue due to a 911 hang-up call. He arrived at approximately 2:50 p.m. As Officer Anglemyer approached the door of the residence, he heard a scream for help. Officer Anglemyer drew his weapon and entered the residence. Once inside, he found Ashley Hill (Ashley), screaming hysterically and running out of the room. Ashley's shirt was stretched and ripped, and she had scratch marks on her chest. She also appeared to have a puffy eye as if she had been hit. Ashley informed Officer Anglemyer that Hill, her husband, had attacked her, and when she tried to call 911, he grabbed the phone from her. Ashley further stated that when she tried to leave the house,

Hill threw her to the ground and punched her in the face. Ashley explained that, at one point, she grabbed a knife, but Hill twisted her arm and took the knife from her. Hill then threw Ashley around and hit her several times. Officer Anglemyer observed that Hill had a cut on the little finger of his right hand, and he was holding a phone.

[5] Officer Anglemyer tried to keep the parties separated so that he could take each of their statements, but this was difficult. Ashley was upset and kept telling Officer Anglemyer that she had been hit in the face, her eye was sore, and she was in a lot of pain. While Officer Anglemyer was at the residence, Ashley also called her mother on the phone and told her about Hill hitting her, throwing her down, and not letting her out of the house. Officer Anglemyer's audio recording device recorded everything at the residence while he was there. In addition, Officer Anglemyer asked Ashley to give him a written statement regarding the events. Ashley wrote out a verified statement under oath on a form provided by the officer at approximately 3:20 p.m.

[6] On December 23, 2013, the State charged Hill with criminal confinement; a Class C felony; domestic battery, a Class D felony; and interference with reporting a crime, a Class A misdemeanor. While Hill was in jail, Ashley's mother, Lisa Conner (Conner), talked to him on two occasions. During their second conversation, Hill told Conner: "I'm in here because of my own stupidity, and I don't blame anyone else." (Transcript p. 442). On April 22, 2014, Ashley told the prosecutor that she had lied to the police and that what she had written in her statement under oath was not true.

On May 19 through May 21, 2015, the trial court conducted a jury trial. During the trial, the prosecutor stated that he decided not to call Ashley as a witness; however, Ashley was on the defendant's witness list as well. The prosecutor stated that it would be a perjury for either side to call her and suggested that the trial court appoint a public defender to represent Ashley. A private attorney subsequently entered his appearance to represent Ashley. The State then made an oral motion in limine to exclude Ashley's testimony:

> [State]: I'm going to make a motion in limine to exclude [Ashley] altogether because if she's going to take the stand and invoke the Fifth Amendment as to any substantive testimony regarding what happened on December 18, 2013[,] she becomes an irrelevant witness. If she is unavailable and unwilling to testify as to the substance of the offense and the elements and crimes at issue in this case, she is irrelevant, and putting her up is unnecessary clutter and confusion and is excludable as a matter of Rules 401 and 403.

(Tr. pp. 330-31).

The trial court stated that Hill could call Ashley and have her testify to matters that were not subject to the Fifth Amendment protection. The trial court further stated that if and when Ashley asserted her Fifth Amendment protection, an analysis would have to be done as to "whether or not there's something out there that could lead to a criminal charge. . . ." (Tr. p. 335).

After more discussion, Hill stated that he planned to call Ashley to ask her background questions such as her name, whether she was married to him, and whether she was present at the time. Ashley's attorney confirmed that Ashley

was going to invoke her Fifth Amendment privilege "every time there is any nexus between the original report and the alleged audio and changing that original report." (Tr. p. 342). The trial court then reiterated that it did not want Ashley to take the stand, invoke her Fifth Amendment privilege, and create confusion. However, the trial court allowed Hill to call Ashley outside the presence of the jury, ask her questions, and "see where it's going." (Tr. p. 344).

[10] Ashley took the stand outside the presence of the jury and testified about her address and that Hill was her husband. In response to any questions about December 18, 2013, Ashley invoked her Fifth Amendment right. Hill stated that he wanted to make a record that his opportunity to confront and cross-examine his accuser and his right to a fair trial had been compromised, but added that he would leave the matter up to the trial court. The trial court granted the State's motion in limine to exclude Ashley's testimony.

[11] During the trial, Hill called Conner to testify. Conner testified that after Ashley called her on December 18, 2013, she went to Ashley's residence some time before 3:00 p.m., and that Ashley, Hill, and two police officers were present. Ashley was very upset and emotional; she was crying and yelling. Conner further testified that Ashley told her that she had lied to the police and that Hill had not beaten her.

[12] Following his jury trial, Hill was found guilty on all Counts. On July 2, 2015, the trial court held a sentencing hearing and sentenced Hill to concurrent terms

of ten years at the Department of Correction, with eight years executed and the remaining two years suspended to probation.

[13] Hill now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[14] The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind. Ct. App. 2004), *trans. denied*. We will reverse a trial court's decision only for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id*. When evidence is erroneously excluded, reversal is only required if the error relates to a material matter or substantially affects the rights of the parties. *Id*. In determining whether an error is harmless, we "must assess the probable impact of that evidence upon the jury." *Swingley v. State*, 739 N.E.2d 132, 134 (Ind. 2000). Where the wrongfully excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error. *Sylvester v. State*, 698 N.E.2d 1126, 1130 (Ind. 1998), *reh'g denied*.

[15] Hill argues that the State improperly interfered with his defense by moving to exclude Ashley's testimony. He specifically asserts that the State intimidated Ashley into invoking her Fifth Amendment right when the State cautioned her of the danger of self-incrimination, if she chose to take the stand. Hill draws our attention to the following exchange that took place outside the presence of the jury:

[Court]: [I]s there anything else we need to take up preliminarily?

[State]: There is, Judge. I'm sorry I didn't mention this. As I've already said, the State of Indiana does not intend to call [Ashley] to testify as to the details of December 18, 2013; however, again, the defense has listed her as a witness and we are all aware . . . that she came in and met with [the prosecutor] on April [22, 2014] and stated that she lied to the police about what happened. And so if she were to testify consistent with that statement and that's the recorded audio statement we discussed earlier, I submit that the attorneys and the [trial court] would be taking advantage of an unrepresented person and I submit that the [trial court] needs to appoint a public defender to advise [Ashley] if she is going to testify.

(Tr. p. 67).

[16]     Hill then recites the following statement made by the State outside of the presence of the jury:

[State]: Well, to revisit the issue of whether the victim in this case testifies on behalf of the defendant—and again, it's not my place or position to intimidate her but I anticipate that she would testify that she committed perjury. I think that it is highly relevant to her testimony what is contained on some of the jail phone calls and I think an attorney needs to be appointed to review a couple of those calls with her in addition to advising her.

(Tr. p. 74).

[17]     Hill finally points to the prosecutor's caution that if either party puts Ashley on the stand to testify knowing that she has changed her story, the party would be

suborning perjury. These statements therefore, Hill argues, "hobbled" his defense by intimidating Ashley into hiring an attorney and invoking her Fifth Amendment right. (Appellant's Br. p. 6).

[18] Looking at the record and the arguments before us, we conclude that the trial court did not abuse its discretion in excluding Ashley's testimony. We first note that motions in limine do not preserve errors for appeal, the defendant must reassert his objection at trial contemporaneously with the introduction of the evidence. *Shoultz v. State*, 995 N.E.2d 647, 654 (Ind. Ct. App. 2013). Failure to object to instances of improper prosecutorial remarks during trial, similarly, results in waiver on appeal. *Heavrin v. State*, 675 N.E.2d 1075, 1082 (Ind. 1996). Because Hill failed to object to the prosecutor's statements and the trial court's ruling, Hill therefore waived these claimed errors on appeal.

[19] Notwithstanding the waiver, Hill's argument equally fails because he invited the error by putting Ashley on the stand despite the State's and trial court's repeated cautions. Under the doctrine of invited error, a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct. *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005). Likewise, invited error precludes relief from counsel's strategic decisions gone awry. *Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014).

[20] Hill, in turn, insists that it was a fundamental error. We disagree. The record reveals that Hill did not neglect to object, he purposefully did not object, stating

that he would "leave it up to [the trial court]," thereby inviting the error. (Tr. p. 345). Hill also never objected to any of the State's remarks raising the issue of perjury. As such, because any error that could have resulted from Hill's failure to object was invited error, not fundamental error, Hill should not be allowed to take advantage of his conscious decision. *See Brewington*, 7 N.E.3d at 977 (trial counsel's calculated decision not to object to the general verdict forms and not to seek specific instructions as a trial strategy was invited error, not fundamental error).

[21] Finally, even if any error should have occurred in the exclusion of evidence, we find it to be harmless. Here, the jury received an opportunity to hear and observe evidence from multiple sources: testimonies by Officer Anglemyer and Conner, police audio recording from the scene, and Ashley's own written statement under oath made at the scene. *See Johnson v. State*, 747 N.E.2d 623, 629 (Ind. Ct. App. 2001) (any error in the exclusion of defendant's evidence was harmless where there was substantial independent evidence to support the conviction).

[22] Turning to the State's statements quoted by Hill in his brief, we find no signs of intimidation of the witness. Our review of the record shows that the State was concerned about Ashley committing a crime and suggested that a counsel be appointed for her so that she would not commit a crime for which she could later be prosecuted. The substance of the statements was not coercive nor threatening. Ashley was offered a public defender, but she chose to hire her own attorney, who advised her to invoke the Fifth Amendment protection. *See*

*Kitchen v. U.S.*, 227 F.3d 1014, 1023 (7th Cir. 2000) (the defendant must provide evidence not only that there was an attempt to coerce a witness but also that the attempted coercion actually influenced the witness's decision to testify or not to testify).

## CONCLUSION

[23] Based on the foregoing, we conclude the State did not interfere with Hill's defense by moving to exclude the testimony of a witness and the trial court did not abuse its discretion in granting the State's motion.

[24] Affirmed.

[25] Najam, J. and May, J. concur