## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 24 2018, 7:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Fred W. Grady
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lee M. Gleaves II,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 24, 2018

Court of Appeals Case No.
17A-CR-3034

Appeal from the
Howard Superior Court

The Honorable
William C. Menges, Jr. Judge

Trial Court Cause No.
34D01-1608-F2-780

**Kirsch, Judge.**

[1] Lee M. Gleaves II ("Gleaves") was convicted following a jury trial of possession of cocaine[1] as a Level 3 felony and was sentenced to 5,840 days. On appeal, he raises the following consolidated and restated issues:

> I. Whether the trial court abused its discretion when, over Gleaves's objection, it admitted evidence that Gleaves claims was more prejudicial than probative, including: (1) testimony that the police drug task force was looking for Gleaves; (2) potentially incriminating evidence related to Gleaves's arrest; and (3) expert testimony about the price and use of cocaine; and

> II. Whether the State presented sufficient evidence to convict Gleaves of possession of cocaine.

[2] We affirm.

## Facts and Procedural History

[3] On August 4, 2016, Officer Chad VanCamp ("Officer VanCamp"), a canine handler for the Kokomo Police Department Drug Task Force ("Task Force"), was informed by a fellow Task Force member, Detective Derek Root ("Detective Root"), that "Gleaves was supposed to be in town running suspected narcotics," likely a "large quantity" of cocaine. *Suppression Hr'g Tr.* at 6.[2] Detective Root advised Officer VanCamp that Gleaves was in a white van

---

[1] *See* Ind. Code § 35-48-4-6(d)(1).

[2] For ease of reference, we refer to the transcript of the hearing on the motion to suppress—Supplemental Volume 2 Transcript, Hearing on Defendant's Motion to Suppress—as *Suppression Hr'g Tr.* and refer to the transcript of the jury trial as *Tr. Vol. II.*

traveling east on Jefferson Street." *Id*. at 7. Officer VanCamp's initial inquiry indicated that Gleaves's driver's license was suspended with infraction. *Id*.

[4] While stationed at the intersection of Jefferson and Witherspoon in Howard County, Officer VanCamp saw Gleaves drive by in the white van and began driving behind him. Activating his radar, Officer VanCamp noted that Gleaves was traveling thirty-seven miles per-hour in a zone posted for thirty miles per hour. *Tr. Vol. II* at 56. Officer VanCamp initiated a traffic stop and activated his body-camera recorder. Officer VanCamp approached the van, notified Gleaves of the traffic infraction, and asked for his driver's license, vehicle registration, and insurance card. Officer VanCamp stated his belief that Gleaves's license was suspended, which Gleaves denied. Returning to his vehicle, Officer VanCamp radioed dispatch for a "driver's license inquiry." *Id*. at 57. While awaiting the "license return," Officer VanCamp retrieved his police dog, Xena, who sniffed the exterior of the van and alerted to an area between the van's rear back passenger door and the front passenger door. Officer VanCamp returned Xena to the cruiser and read Gleaves his *Miranda* rights.

[5] Kokomo Police Officer Guy Trobaugh ("Officer Trobaugh"), who had arrived at the scene, searched Gleaves for illegal substances but found nothing. *Suppression Hr'g Tr.* at 10; *Tr. Vol. II* at 59. Meanwhile, Officer VanCamp searched the interior of the van and noted that the van's plastic parts, behind which drugs could be concealed, were very loose and that a "masking agent" had been sprayed in the van, which could have obscured the smell of narcotics.

*Suppression Hr'g Tr.* at 11. Ten minutes into the search, Officer VanCamp had found nothing illegal. Heavy traffic conditions and the August heat made it unsafe for Xena to search the van at the scene. Therefore, the officers determined that the van should be towed to the basement of the Kokomo Police Department. While waiting for the tow truck, Officer VanCamp issued Gleaves a traffic citation for speeding and driving while suspended and released him at the scene. The traffic stop was captured on Officer VanCamp's body camera ("Video One").

[6] Officer VanCamp followed the van from the location of the traffic stop to the basement of the police station, where the van was locked and secured. Officer VanCamp obtained a search warrant, and again with the aid of Xena, he and Detective Root performed a full search of the van's interior. Xena alerted to a missing cup holder, inside which Officer VanCamp found several plastic bags containing approximately fifty-seven grams of crack cocaine, or about two ounces.[3] Based on that evidence, Officer VanCamp and officers from Howard and Cass Counties went to Gleaves's residence in Logansport. Gleaves was on in-home detention at that time. Within seconds of entering the home, Officer VanCamp told Gleaves that he was there to arrest him, and Gleaves said, "I figured as much" ("Gleaves's Admission"). *Id*. at 15; *Tr. Vol. II* at 77. Immediately thereafter, Officer VanCamp informed Gleaves of the charges

---

[3] We note that Officer VanCamp testified at trial that he found two bags, one of which weighed fifty-seven grams and the other of which weighed ten grams. *Tr. Vol. II* at 74. The State, however, charged Gleaves with possession of just fifty-seven grams.

against him. The scene of Gleaves's arrest was filmed by Officer VanCamp on a second video ("Video Two").[4] *Tr. Vol. II* at 78.

[7]     On August 5, 2016, Gleaves was charged with one count of dealing in cocaine as a Level 2 felony and one count of possession of cocaine as a Level 3 felony. On October 24, 2016, Gleaves filed a motion to suppress, and later an amendment, alleging that the seizure of the van and extended stop were violations of the Indiana and United States Constitutions. Gleaves asked the trial court to suppress "[a]ny evidence seized or statements made which flow from the illegal police action." *Appellant's App.* at 24. The trial court denied Gleaves's motion after a hearing.

[8]     Thereafter, Gleaves filed a motion in limine to: (1) exclude, as prejudicial, any portion of Video One or Video Two that suggested that Gleaves was on in-home detention or had a prior criminal history; and (2) exclude, as irrelevant, all of Video Two, which contained potentially incriminating evidence and admissions Gleaves made at the time of his arrest. *Tr. Vol. II* at 7, 8-9. During a hearing on the motion in limine, the State agreed to exclude evidence of Gleaves's in-home detention and prior convictions but argued that Gleaves's

---

[4] Officer VanCamp's body-camera recorded the traffic stop and arrest as two separate files, Video One and Video Two respectively. Officer VanCamp's recording of the traffic stop was admitted into evidence as State's Exhibit 2 and the recording of the arrest was admitted as State's Exhibit 7. In the record before us, the DVD admitted as State's Exhibit 2 has both Video One and Video Two. State's Exhibit 7, however, is just a photocopy of the DVD. Notwithstanding the absence of a DVD for State's Exhibit 7, this court was able to view the relevant portions of the arrest on Video Two of State's Exhibit 2. Therefore, our reference to Video Two is a reference to the recording of the arrest found in State's Exhibit 2.

admission of guilt in Video Two was relevant and should be admitted. *Id*. at 9. Defense counsel countered that Video Two depicted officers from Cass and Howard Counties at the scene of the arrest with no explanation as to the reason for their presence. *Id*. Defense counsel also argued that the admission of evidence showing Gleaves's in-home detention ankle bracelet would be "highly prejudicial." *Id*. at 10. The trial court agreed that evidence pertaining to prior bad acts, including the fact that Gleaves was on in-home detention, would be excluded. However, finding the evidence more probative than prejudicial, the trial court allowed the jury to watch the first two minutes and fifteen seconds of Video Two, which showed Gleaves's Admission.[5] Prior to October 27, 2017, when the trial reconvened, Gleaves filed a second motion to suppress "statements [that] would be reasonably interpreted to be incriminating." *Id*. at 36. The trial court heard argument before denying Gleaves's motion.

[9] During trial, Officer VanCamp testified about the circumstances surrounding the police stop. When asked why he was looking for Gleaves, Officer VanCamp said, "The detective of the Drug Task Force . . . ." *Id.* at 50. Before Officer VanCamp could continue, defense counsel objected and, outside the presence of the jury, argued that Officer VanCamp's testimony—that the Task Force was looking for Gleaves—introduced the notion "that there was some sort of prior bad act or prior indication out there that [Gleaves] was committing

---

[5] Video Two was stopped after Gleaves's Admission. The jury did not see the removal of the in-home detention bracelet.

some criminal offense or had committed some criminal offense and that's why they were watching out for [him]." *Id*. at 51. Moving for a mistrial, defense counsel argued that Officer VanCamp's answer had already tainted the jury and had been improperly admitted because it was in violation of the motion in limine's exclusion of references to prior bad acts. *Id*. In the alternative, defense counsel asked that no reference or allegation be made regarding the fact that the police had received "hearsay information from some uncorroborated third source about [Gleaves] having illegal narcotics that day and/or guns" or as to why police stopped Gleaves. *Id*. at 51-52.

[10] The State responded that it was not intending to introduce hearsay evidence; instead, the State wanted "to show what Officer VanCamp was doing on that day and why he was doing it." *Id*. at 52. The trial court denied defense counsel's motion for a mistrial and prohibited the State from suggesting it knew that Gleaves had drugs in his car that day but allowed Officer VanCamp to testify "that he was asked by the Drug Task Force to keep an eye out for [Gleaves]." *Id*. at 54. In other words, evidence that the Task Force was looking for Gleaves was admissible, but evidence as to why police were looking for him was not admissible. *Id*. Back in the presence of the jury, Officer VanCamp testified, without objection, that he was looking for Gleaves because "Detective Root requested that I be in the area." *Id*. at 55.

[11] Officer VanCamp testified that when he stopped Gleaves for speeding, Gleaves was the only one in the car. While awaiting information on the status of Gleaves's driving privileges, Officer VanCamp and Xena walked around the

van, and Xena's alert resulted in a preliminary search. Gleaves was issued a ticket, and the van was towed to the police station. A later search of the van uncovered fifty-seven grams of crack cocaine. Testifying as an expert, Officer VanCamp explained that the typical amount of cocaine a *user* would have on his person, if searched during a traffic stop, was "[t]ypically a half gram or less." *Id.* at 81. Officer VanCamp described going to Logansport to arrest Gleaves, and upon telling him that he was being arrested, Gleaves said he figured as much. *Id.* at 77. Soon thereafter, Gleaves spontaneously offered to work with the Task Force in an effort to avoid prison.

[12] Regarding the amount of cocaine found in the van, Detective Root testified that, as an undercover officer, he would typically buy a half gram to one gram of cocaine and occasionally an "8 ball" on the local market for between $100 to $300. *Id.* at 103. Detective Root testified that, during his time on the Task Force, he had less than five opportunities to buy as much as one ounce of cocaine and that it cost anywhere from $1,500 to $2,000. At the conclusion of the jury trial, Gleaves was acquitted of dealing in cocaine but found guilty of possession of cocaine and sentenced to 5,840 days. Gleaves now appeals.

## Discussion and Decision

## I. Admission of Evidence

[13] Gleaves first contends that the trial court abused its discretion when it admitted certain evidence. The admission or exclusion of evidence falls within the sound discretion of the trial court, and appellate courts review the admission of

evidence only for an abuse of discretion. *Abney v. State*, 79 N.E.3d 942, 953 (Ind. Ct. App. 2017). "An abuse of discretion occurs 'where the decision is clearly against the logic and effect of the facts and circumstances.'" *Id.* (quoting *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)). In reviewing the admissibility of evidence, we consider only the evidence favorable to the trial court's ruling and any unrefuted evidence in the appellant's favor. *Kirk v. State*, 974 N.E.2d 1059, 1066 (Ind. Ct. App. 2012), *trans. denied*.

[14] Indiana Evidence Rules 401 through 403 govern relevancy of evidence. *Fuentes v. State*, 10 N.E.3d 68, 72 (Ind. Ct. App. 2014), *trans. denied.* "Relevant evidence is admissible; irrelevant evidence is not." *Id.* (citing Ind. Evidence Rule 402). "Evidence is relevant if it has any tendency to make any 'fact that is of consequence to the determination' of the action more or less probable." *Id.* at 72-73 (citing Evid. R. 401). Relevant evidence can be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. *Id.* at 73 (citing Evid. R. 403).

[15] "Indiana Evidence Rule 404(b) provides that evidence of other crimes, wrongs, or acts of a defendant is not admissible to prove the character of the defendant in order to show action in conformity therewith." *Baker v. State*, 997 N.E.2d 67, 70 (Ind. Ct. App. 2013). "The well-established rationale behind Evidence Rule 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct." *Id.* Such evidence, however, may "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake or lack of accident." Evid. R. 404(b). "In assessing the admissibility of Evidence Rule 404(b) evidence, the trial court must "(1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect." *Baker*, 997 N.E.2d at 70. A trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: 1) unfair prejudice; 2) confusing the issues; 3) misleading the jury; 4) undue delay; or 5) needlessly presenting cumulative evidence. Evid. R. 403.

### A. Evidence of why Officer VanCamp was Looking for Gleaves

[16] Gleaves first argues that the trial court abused its discretion when, over his objection, it admitted Officer VanCamp's statements that he was looking for Gleaves at the directive of Detective Root of the Task Force. *Appellant's Br.* at 18. Gleaves maintains that this testimony suggested that he had prior interactions with the Task Force, which allowed the jury to infer that he had committed prior bad acts. A review of the record does not support Gleaves's contention. Officer VanCamp testified that, on the day of the traffic stop, he knew Gleaves and the vehicle he drove. *Tr. Vol. II* at 50. Officer VanCamp did not say how or why he had such knowledge. *Id.* The following exchange occurred between the State and Officer VanCamp:

> Q. And on that date of August 4, 2016, were you looking for Mr. Gleaves?

A. Yes I was.

Q. And why were you looking for him?

A. The detective of the Drug Task Force—

*Id.* Defense counsel then objected.

[17] Outside the presence of the jury, defense counsel asserted that it was improper for Officer VanCamp to testify that Gleaves was known to the Task Force. *Id.* Defense counsel argued that the introduction of such evidence violated Evidence Rule 404(b) and the order on his motion in limine because it allowed the jury to make the inference that Gleaves had previously committed or was about to commit a criminal offense and, for that reason, was known to the Task Force. *Id.* at 51. The State countered that information that Gleaves had a "suspended driver's license" was reason enough to look for Gleaves. *Id.* at 52. After a hearing on the matter, the trial court ruled that Officer VanCamp could testify that he was asked to watch for Gleaves, and evidence could be admitted that the Task Force was looking for Gleaves. *Id.* at 54. Nevertheless, evidence would not be admitted as to "why [the police] were looking for [Gleaves]." *Id.* at 54. When the jury returned to the courtroom, Officer VanCamp, responding to the question of why he was in the area, said, "Detective Root requested that I be in the area." *Id.* at 55. Defense counsel did not object. *Id.*

[18] The trial court did not abuse its discretion when it allowed Officer VanCamp's testimony. Defense counsel was able to object before Officer VanCamp fully

answered. Additionally, Officer VanCamp's testimony contained no evidence of prior bad acts. Hearing the above exchange, the jury could have reasonably concluded that Detective Root wanted Officer VanCamp to look for Gleaves for any number of innocent reasons—as a Task Force confidential informant, a witness to a crime, or a victim of a crime. None of those reasons paint Gleaves in a negative light. Here, no reference was made to any past or present investigation of any sort, and the only evidence of bad conduct was that Gleaves was speeding and driving while suspended at the time Officer VanCamp spotted him. Furthermore, after being told he could respond to the question, Officer VanCamp said, "Detective Root requested that I be in the area." *Tr. Vol. II* at 50, 55. Defense counsel did not object to this response. *Id.* at 55. As such, the record before us does not support Gleaves's contention that the trial court abused its discretion when it admitted Officer VanCamp's statements.

## B. Incriminating Evidence Relating to Gleaves's Arrest

[19] Gleaves next contends that the trial court abused its discretion when it admitted evidence and statements from the scene of his arrest that were more prejudicial than probative. Gleaves cites to three sources of prejudicial evidence that were erroneously admitted: 1) the portion of Video Two showing officers from both Cass and Howard Counties at the scene of the arrest; 2) the portion of Video Two showing Gleaves's Admission; and (3) Gleaves's statement that he was willing to work with law enforcement in an effort to avoid prison. *Appellant's Br.* at 20-23.

[20]   Gleaves appears to intertwine his first and second arguments, both of which allege that the trial court abused its discretion when it allowed the jury to watch the first two minutes and fifteen seconds of Video Two. Regarding his first claim, Gleaves argues that he was prejudiced when the jury saw officers "from both police departments, present at the time of the arrest, without a disclosure to the jury of the Cass County Officer's primary role at the scene for removal of [Gleaves]'s in-home-detention ankle bracelet." *Appellant's Br.* at 20. Second, he argues that, regarding his statement "I figured as much," *Tr. Vol. II* at 77, "the State prejudicially painted this statement to the jury," by suggesting that Gleaves expected to be arrested for possession of cocaine. *Appellant's Br.* at 21. Gleaves argues that the State's characterization of his statement undermined his theory that "the knowledge of his in-home detention violation would more than reasonably explain the statement he made when the police showed up at his home in Logansport and told him he was being placed under arrest." *Id.* at 21. Gleaves's arguments suggest that he was prejudiced because the jury did not know that he was on in-home detention. At trial, Gleaves did not offer evidence that he was on in-home detention. In fact, prior to trial, he filed a motion in limine to exclude any evidence relating to prior bad acts, including a reference to his in-home detention. Accordingly, Gleaves cannot now complain that he was prejudiced by the fact that, without notice of his in-home detention, the jury was unable to properly evaluate why multiple officers were on the scene or what offense Gleaves believed warranted his arrest.

[21]     We are likewise not convinced that Video Two should have been excluded on the basis that its contents were more prejudicial than probative under Evidence Rule 403. The jury viewed just the first two minutes and fifteen seconds of Video Two. The first minute and fifteen seconds showed Officer VanCamp driving to Gleaves's Logansport residence, walking with a second officer to Gleaves's door, and knocking. Officer VanCamp knocked for about twenty-five seconds. One minute and fifty seconds into the recording, a man, not in uniform, met Officer VanCamp at the door and introduced himself.[6] About two minutes and five seconds into the recording, Officer VanCamp entered the residence and said, "How are you doing Lee. Here to arrest you." Video Two at 00:02:05. Gleaves immediately said, "I figured as much." *Id.* at 00:02:06. Two minutes and eight seconds into the recording, Officer VanCamp told Gleaves he is being arrested for dealing in cocaine and possession of cocaine. In the remaining seven seconds viewed by the jury, Gleaves asked Officer VanCamp if he can wait a few minutes, explaining that his wife was not home, and that he was watching his children. During the first two minutes and fifteen seconds, there is no reference to other officers or police departments. Gleaves's description of numerous officers from two police departments being present at his arrest is not reflected in the first two minutes and fifteen seconds of Video Two. We find no prejudice.

---

[6] From the recording, the man's name and reason for being at the scene, if provided, cannot be deciphered.

We also disagree with Gleaves's second argument that his statement to Officer VanCamp was more prejudicial than probative. Gleaves's statement was certainly relevant to the matter of whether he was guilty of the crimes charged. During the hearing on the motion in limine to exclude evidence of Gleaves's admission, the trial court said:

> I think it would be up to the jury to determine whether or not the statements Mr. Gleaves . . . makes . . . are admissions or not, but I think they . . . have the right to hear that. And to the extent that it is an admission it is . . . highly prejudicial as is every bit of culpatory evidence that the State introduces in . . . the course of trial. It's prejudicial to the defendant but it's admissible . . . .

*Tr. Vol. II* at 11. We agree with the trial court. Our court has recognized:

> All evidence that is relevant to a criminal prosecution is inherently prejudicial; thus, proper inquiry under Evidence Rule 403 boils down to a balance of the probative value of the proffered evidence against the likely unfair prejudicial impact of that evidence. When determining the likely unfair prejudicial impact, courts will look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury.

*Fuentes*, 10 N.E.3d at 73 (internal citations omitted). Gleaves argues that his statement had unfair prejudicial impact because it allowed the jury to assume he was admitting to cocaine possession instead of a violation of his in-home detention. It was Gleaves, however, who invited the error by requesting the suppression of evidence that Gleaves was on in-home detention—the very

evidence that could have allowed the jury to make such an inference. "Under the doctrine of invited error, a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct." *Hill v. State*, 51 N.E.3d 446, 451 (Ind. Ct. App. 2016) (citing *Wright v. State,* 828 N.E.2d 904, 907 (Ind.2005). Furthermore, Gleaves's Admission was more probative than prejudicial, and the trial court did not abuse its discretion when it admitted that statement.

[23] Third, Gleaves contends that the trial court abused its discretion when it allowed Officer VanCamp to testify that Gleaves had requested to work with law enforcement in an effort to avoid prison. *Tr. Vol. II* at 78. Again, we find no abuse. Like Gleaves's Admission, Gleaves's offer to work with the Task Force was prejudicial. Nevertheless, it was also highly relevant to Gleaves's guilt or innocence. *See Fuentes*, 10 N.E.3d at 73 (evidence relevant to a criminal prosecution is inherently prejudicial). Gleaves was not coerced into making this statement; instead, he spontaneously offered to work with law enforcement in an effort to avoid going to prison. While inherently prejudicial, like all evidence that is relevant in a criminal prosecution, the trial court's determination, that on balance it was more probative than prejudicial, was not against the logic and effect of the facts and circumstances before the court. The trial court did not abuse its discretion.

### C. Testimony about Amount and Value of Cocaine

[24] During Gleaves's trial, Officer VanCamp and Detective Root testified about the quantity of cocaine found, and their experiences of buying cocaine as part of the

Task Force. Officer VanCamp testified that a typical cocaine user has a half gram or less in his or her possession. *Tr. Vol. II* at 81. Detective Root testified that, as part of the Task Force, he would typically buy either "a half gram at a time or a full gram at a time," but sometimes as much as "an 8 ball, which is about three to three and a half grams." *Id*. at 102-03. Detective Root also testified that he had had less than five opportunities to locally buy one ounce of cocaine, which cost about $1,500 to $2,000 per ounce. *Id*. at 103. Gleaves had fifty-seven grams of cocaine in his possession and, in the opinion of Officer VanCamp and Detective Root, that amount was far more than would be used for personal consumption and was indicative of dealing in cocaine. Notwithstanding Gleaves's claim to the contrary, testimony of this nature was relevant because Gleaves had been charged not only with possession, but also with dealing in cocaine.

[25]     Gleaves contends that: (1) the officers' testimony "had substantial influence in tainting the jury" by portraying Gleaves as a "drug dealer with a large amount of cocaine"; (2) the State relied heavily on the amount of cocaine in closing argument; and (3) Gleaves was prejudiced by this testimony. *Appellant's Br*. at 24, 25. Here, the officers testified about the amount of cocaine that a user would possess in an effort to prove that, since Gleaves possessed fifty-seven grams when a typical user possessed less than one gram, Gleaves must have been dealing in cocaine. Gleaves asserts that the jury was unduly influenced by the officers' testimony. We disagree. Where, like here, Gleaves was found not guilty of dealing in cocaine, Gleaves has shown no prejudice.

## II. Sufficiency of the Evidence

[26] Gleaves contends that the State presented insufficient evidence to support his conviction. The deferential standard of review for sufficiency claims is well settled. When reviewing the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Wilson v. State*, 39 N.E.3d 705, 716 (Ind. Ct. App. 2015), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from that evidence. *Id.* We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Fuentes*, 10 N.E.3d at 75. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012). As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Wilson*, 39 N.E.3d at 716. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict, and a conviction may be based upon circumstantial evidence alone. *Id.*

[27] To convict Gleaves of possession of cocaine as a Level 3 felony, the State had to prove that he: 1) knowingly or intentionally; 2) possessed cocaine; 3) weighing at least twenty-eight grams. Ind. Code § 35-48-4-6(d)(1). Here, Gleaves was the only occupant of the van he was driving at the time he was stopped by police. *Tr. Vol. II* at 82. The van was towed from the scene of the traffic stop, and Officer VanCamp followed the van from the scene to the police

department basement, where it was locked and secured. A later search of the van uncovered fifty-seven grams of cocaine concealed within several bags that had been stuffed inside a missing cup holder. *Id.* at 73-74. Upon arriving at Gleaves's residence, Officer VanCamp told Gleaves he was there to arrest him. Unprompted, Gleaves said, "I figured as much." *Id.* at 77. While still at the scene of the arrest, Gleaves offered to work with the Task Force in an effort to avoid prison. Here, Gleaves's exclusive control over the van in which fifty-seven grams of cocaine were discovered, and his later tacit admissions to Officer VanCamp that he knew they were going to arrest him, and he wanted to cooperate to avoid prison, constitute sufficient evidence to uphold his conviction for Level 3 felony possession of cocaine. *See Wilson v. State*, 966 N.E.2d 1259, 1265 (Ind. Ct. App. 2012) (evidence was sufficient to prove felony possession of narcotic drug located inside vehicle where defendant had dominion and control over vehicle and was the only occupant at the time of his arrest), *trans. denied*; *Whitney v. State*, 726 N.E.2d 823, 826 (Ind. Ct. App. 2000) (defendant's sole possession of vehicle in which cocaine was discovered was sufficient to establish constructive possession of cocaine); *Woods v. State*, 640 N.E.2d 1089, 1091 (Ind. Ct. App. 1994) (evidence was sufficient to prove possession of cocaine when cocaine was found under driver's seat of vehicle

defendant was operating).[7] The State presented sufficient evidence to support Gleaves's conviction.

[28] Affirmed.

Vaidik, C.J., and Riley, J., concur.

---

[7] Referring to the elements necessary to convict him of possession of cocaine, Gleaves argues that, "Without relying on [Gleaves's] prejudicial statements throughout the trial, the State failed to prove each of these elements beyond a reasonable doubt." *Appellant's Br.* at 25. Gleaves suggests that the State should have run tests for DNA and fingerprints and should have looked at his cell phone records. *Id.* at 26. Finding as we do that the trial court did not abuse its discretion when it admitted Gleaves's statements, we need not address Gleaves's question of whether there was sufficient evidence to support Gleaves's conviction in the absence of Gleaves's statements.